**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL WIEBER, | ) | |
| | ) | |
| Plaintiff, | ) | 2:25-CV-762 |
| vs. | ) | |
| | ) | Hon. J. Nicholas Ranjan |
| RAISING CANE'S RESTAURANTS, | ) | |
| LLC, *doing business as* RAISING | ) | |
| CANE'S CHICKEN FINGERS; | ) | |
| RAISING CANE'S USA, LLC; and | ) | |
| CATHERINE DANIHY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

Daniel Wieber is a gay, Jewish man. He worked at the popular chicken chain restaurant, Raising Cane's. When he filled out his employment paperwork at the start of his job, he signed an arbitration agreement, which is becoming increasingly standard for many retail employees. ECF 15 at 6-12. Shortly after starting there, he experienced and witnessed harassment and discrimination; he complained about it; and he was then retaliated against with discipline and ultimately termination.

After Mr. Wieber was fired, he filed this employment-discrimination lawsuit against Raising Cane's and his former supervisor, Catherine Danihy. ECF 1. Defendants' counsel pointed out the arbitration agreement to opposing counsel, ECF 14-2 at 2, and counsel for both sides negotiated sending the case to AAA arbitration, with Raising Cane's paying the filing fee, ECF 14-3 at 2, 14-4 at 2, 14-5 at 2, 14-6 at 2, 14-7 at 2. Defendants' counsel thought he had a deal, and filed the AAA claim and paid the filing fee, ECF 13 at 3-4, 14-8 at 2-3, but then counsel for Mr. Wieber changed his mind, ECF 14-10 at 2-3.

Raising Cane's and Ms. Danihy have now filed a motion to compel arbitration, invoking the arbitration agreement that Mr. Wieber signed at the beginning of his

- 1 -

employment, and, as a fallback, arguing that Mr. Wieber's counsel's agreement to go to AAA was a new binding arbitration agreement.  ECF 12.  On careful review, the Court denies the motion to compel.

Beginning with the employment arbitration agreement, the Court finds that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA) precludes arbitration.  The EFAA gives the plaintiff an option of disclaiming a pre-dispute arbitration agreement for any "case" that "relates to" a "sexual assault dispute or sexual harassment dispute."  9 U.S.C. § 402(a).  The EFAA defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  9 U.S.C. § 401(4).

Mr. Wieber has asserted at least two Title VII claims, in which he alleges that Ms. Danihy and Raising Cane's discriminated against him on the basis of sexual orientation, including through the use of derogatory remarks about gay people.  ECF 1 at 15-21.  Mr. Wieber argues that these claims create a sexual harassment dispute. ECF 19.  Defendants disagree and say that sexual harassment means a situation where the plaintiff is faced with unwanted sexual advances, not discrimination on the basis of sexual orientation.  ECF 13, 20.  The Court agrees with Mr. Wieber.

Sexual harassment under federal law is broader than just unwanted sexual advances.  *See Bostock v. Clayton Cnty, Georgia*, 590 U.S. 644, 683 (2020)) ("An employer who fires an individual merely for being gay or transgender defies the law"). The EEOC explains it like this: "Harassment does not have to be of a sexual nature, however, and can include offensive remarks about a person's sex.  For example, it is illegal to harass a woman by making offensive comments about women in general." *Sexual Harassment*, U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/sexual-harassment (last visited Mar. 23, 2026).

In this case, Mr. Webber makes allegations about how Ms. Danihy used frequent derogatory remarks toward gay people around him. Take these allegations, for example:

> 28. Throughout his employment, in addition to her aforementioned religious discrimination, Ms. Danihy made repeated, offensive remarks about gay employees in the presence of Mr. Wieber, often relying on harmful stereotypes.
>
> 29. Ms. Danihy described individuals who identified as gay as "spicy," having "too much attitude," and other derogatory generalizations that reflected deep-seated bias and animus toward individuals based on their sexual orientation.
>
> 30. These comments were not isolated or casual—they were frequent, unsolicited, and made in a manner that underscored Ms. Danihy's discriminatory views.
>
> 31. Mr. Wieber felt humiliated and uncomfortable as a result of Ms. Danihy's remarks, especially as she knew that he identified as gay.

ECF 1 at 5.

These allegations reflect offensive comments about gay people, said to or in front of a gay person in the work environment, and so amount to a "sexual harassment dispute." And as Defense counsel concedes, *see* ECF 20 at 2, Congress passed the EFAA approximately two years after *Bostock*, so was presumably aware of the scope of the term "sexual harassment" under Title VII. This means the EFAA applies and allows Mr. Wieber to decline to arbitrate.[1]

---

[1] The allegations could be more fulsome and detailed, but given that questions about a hostile work environment are resolved based on the "totality of the circumstances" and generally after discovery, the Court finds that there is enough to at least plausibly allege discrimination claims stemming from sexual-orientation discrimination. *See, e.g.*, *Doe v. Saber Healthcare Grp.*, No. 3:23-CV-1608, 2024 WL

Next, the Court considers Defendants' argument as to the agreement by Plaintiff's counsel to arbitrate in AAA.  Defendants argue that after this case was filed, Plaintiff's counsel agreed to arbitrate this case in AAA, and this is a new arbitration agreement.  The Court disagrees.

On review of the email correspondence between counsel, there certainly was an agreement by counsel to arbitrate in AAA, and then Plaintiff's counsel reneged on the deal.  But Plaintiff's counsel lacked the actual or apparent authority to bind his client to such an agreement.

In this case, the Court finds that the "contract" formed here between counsel was essentially a settlement agreement.  The parties resolved their dispute over the employment arbitration agreement by, on the one hand, Mr. Wieber consenting to stay his claims pending arbitration and, on the other, Raising Cane's agreeing to cover the AAA filing fee.  "The law in Pennsylvania is quite clear that an attorney must have express authority to settle a cause of action of the client." *Vangjeli v. Banks*, 668 F. Supp. 3d 400, 406 (E.D. Pa. 2023) (cleaned up). An agreement by an attorney creates a rebuttable presumption that the client agreed to it.  And that presumption can be overcome if the client expressly gave his attorney authority to settle the case on the terms discussed.  *Id*. at 407.

The Court finds that there was a rebuttable presumption in place that counsel agreed to the arbitration agreement, but that was overcome because Mr. Wieber never gave his authority to settle.  ECF 19 at 11-12.  Raising Cane's argues that a hearing is needed on this issue, but the Court finds that Plaintiff's counsel's

2749156, at *7 (M.D. Pa. May 29, 2024) (finding similar sexual-orientation claims pled enough to trigger the EFAA bar on arbitration).

representation to the Court that he never obtained permission from Mr. Wieber to agree to arbitrate is sufficient to resolve the issue. *Id.*[2]

For these reasons, the Court denies the motion.[3]


DATED this 25th day of March, 2026.

BY THE COURT:


/s/ J. Nicholas Ranjan
United States District Judge

---

[2] The email correspondence between counsel supports the idea that Plaintiff's counsel never discussed the issue with his client. Plaintiff's counsel was largely preoccupied with other matters, and the correspondence reflects a haphazard and rushed back and forth between counsel. *See* ECF 14.

[3] Plaintiff's counsel ought to voluntarily reimburse Defendants for the AAA filing fee. To the extent this becomes an issue, this order is without prejudice to Defendants moving the Court for sanctions to recoup that cost.